## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **RICHARD LYNN DOPP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-06-842-D** |
| | ) | |
| **JUSTIN JONES, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Richard Dopp, a private prison inmate in the custody of the State of Oklahoma appearing pro se, has brought this civil rights complaint pursuant to 42 U.S.C. § 1983 alleging that various prison officials and employees violated his constitutional guarantees to equal participation in religious services, to adequate hygiene supplies, and to medical care. In accordance with the undersigned's order and with *Martinez v. Aaron,* 570 F. 2d 317 (10th Cir. 1978), a special report was filed by the Lawton Correctional Facility ("LCF") [Doc. No. 31].[1] This special report was subsequently supplemented with an affidavit which had been referenced but not included in the initial report [Doc. No. 46]. Following an initial round of dispositive motions, various Oklahoma Department of Corrections ("DOC") Defendants were dismissed [Doc. No. 58]. The only remaining Defendants, collectively, the LCF Defendants,[2] have again requested dispositive relief – this time through summary judgment

---

[1]The LCF Defendants also incorporated [Doc. No. 31, p. 2] the special report filed by the Oklahoma Department of Corrections Defendants [Doc. Nos. 28 and 30].

[2]The LCF Defendants are David Miller, Ronald Schnee, Richard Tinker, Larry Rollerson,
(continued...)

[Doc. No. 90] – as has the Plaintiff [Tr. 87].  The parties have responded to each others' motions [Doc. Nos. 94 and 95], and they are at issue.

Pertinent to a determination of the motions is the court's decision allowing the LCF Defendants to file their answer out of time [Doc. No. 100].  This order negates Plaintiff's claim that his allegations have been deemed admitted by Defendants' failure to file a timely answer.  This same order, *id.* at 4,  also binds Defendants to the answer [Doc. No. 101] attached to their Motion for Extension of Time to File Answer or in the Alternative for Leave to File Attached Answer Out of Time [Doc. No. 89].  Accordingly, because Defendants failed to preserve affirmative defenses directed to the statute of limitations and to exhaustion of administrative remedies [Doc. No. 101, pp. 2 - 3], those portions of Defendants' briefs asserting, or reasserting, these defenses have been disregarded by the undersigned.

## **The Complaint**

Through the first count of his complaint, Plaintiff alleges that Defendants David Miller, the current warden at LCF, Ronald Schnee, programs' administrator at LCF, and Richard Tinker, the LCF chaplain, violated Plaintiff's rights under the First Amendment and the Equal Protection Clause "by refusing to allow plaintiff to attend religious services held at [LCF]." [Doc. No. 1, sequential p. 4].  As factual support for this claim, Plaintiff explains that prior to the Spring of 2006 he "was allowed to attend several different religious services

---

[2](...continued)
Dayton Poppell, Paul DeWeese, and Melissa Halverson, whose name is sometimes spelled as Halvorson throughout both the briefing and the records in this case.

(protestant, baptist, pentecostal, hispanic, etc.) offered at L. C. F." *Id.* In February or March

of 2006, however, Defendants Tinker, Schnee and Miller implemented a new policy limiting

attendance to one basic faith group service and an attendant support group service. *Id.*

Plaintiff maintains that "[t]he problem encountered by the plaintiff is the fact that said L.C.

F. defendants refuse to afford plaintiff to attend more than one basic faith group service, yet

said defendants' [sic] allow numerous other similarly situated inmates to attend more than

one basic faith group services." *Id*. at sequential pp. 4 - 5.      Plaintiff's second count asserts

that all Defendants with the exception of Defendants Schnee and Tinker "have violated the

U.S. Constitution's 8th Amendment by being deliberate indifferent to the medical treatment

and hygiene requirements of plaintiff rising to cruel and or unusual punishment enforced

through the 14th Amendment upon the states." *Id.* at sequential p. 4.  Plaintiff continues by

alleging that "[t]hese same defendants are in violation of the 5th amendment by affording

other similarly situated inmates these referenced above services but refusing to afford same

to plaintiff." *Id.* In his statement of supporting facts, Plaintiff maintains that he has advised

certain LCF Defendants since 1999 that their refusal to provide him with adequate hygiene

supplies in a timely manner "was resulting in his health to decline in the areas of dental and

hair loss, etc.," claiming that he has now suffered resulting permanent injuries. *Id.*

Specifically, Plaintiff points to the removal of a tooth in September, 2005 due to inadequate

dental supplies, to his January, 2005 complaint of daily hair loss as a result of "refusal to

provide plaintiff with any shampoo and dietary requirements, medical care, etc.," and to the

alleged refusal "to provide plaintiff with timely and adequate quality and quanity of soap as required by law resulting in further violations." *Id.* at sequential pp. 5 - 6.

## Standard of Review

Summary judgment may be granted only where the pleadings and any supporting documentary materials "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court must view the facts and inferences drawn from the record in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382,* 462 F.3d 1253, 1258 (10th Cir. 2006) (quotation omitted). And, while a pro se plaintiff's complaint is liberally construed, a pro se plaintiff must adhere to the same rules of procedure which are binding on all litigants. *Kay v. Bemis,* 500 F.3d 1214, 1218 (10th Cir. 2007). Thus, strict adherence by a pro se plaintiff to the requirements of Fed. R. Civ. P. 56 is required. With respect to those requirements, the Supreme Court has determined that

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

In a case such as this where cross motions for summary judgment are at issue, the following rules apply:

> "Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co. v. Sudduth,* 608 F.2d 431, 433 (10th Cir. 1979). Even where the parties file cross motions pursuant to Rule 56, summary judgment is inappropriate if disputes remain as to material facts. *Atl. Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir. 2000). Where the facts are not in dispute and the parties only disagree about whether the actions were constitutional, summary disposition is appropriate. *See* Fed.R.Civ.P. 56(c).

*Christian Heritage v. OK Secondary Sch. Activities,* 483 F.3d 1025, 1030 (10th Cir. 2007).

In the following analysis, both parties' motions are separately considered as to each of Plaintiff's claims.

## Analysis

### Equal Protection – Religious Services

### Plaintiff's Motion for Summary Judgment

It is important at the outset of this analysis to address the precise nature of Plaintiff's claim regarding his right to attend multiple religious services. The undersigned's previous LCF Defendants-related Report and Recommendation – which dealt primarily with the exhaustion of administrative remedies – specifically determined upon application of the law pertaining to exhaustion that "Plaintiff has exhausted the only claim that he maintains he grieved with respect to religious services: that he was denied the equal protection of the law because he was not permitted to attend two different religious services while other similarly situated inmates were so allowed." [Doc. No. 51, p. 15]. Plaintiff made no objection to this Report and Recommendation [Doc. No. 52, p. 4], and it was adopted by Judge DeGiusti [Doc. No. 58, p. 11]. Thus, the undersigned finds that despite the failure of the LCF

Defendants to preserve through their answer,[3] *see* discussion *supra* p. 2, Plaintiff's alleged failure to exhaust his administrative remedies – an omission which prohibits the defense from being reurged – the law of this case is that Plaintiff exhausted only *one* claim regarding religious rights and services: "that he was denied the equal protection of the law because he was not permitted to attend two different religious services while other similarly situated inmates were so allowed." [Doc. No. 51, p. 15]. *See Arizona v. California,* 460 U.S. 605, 618 (1983) ("As most commonly defined, the [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."). Consequently, because Plaintiff exhausted only this single claim regarding selective enforcement of the religious services policy, the undersigned has not considered any claim or argument concerning the constitutionality of LCF's religious services policy itself.

Turning to the merits of Plaintiff's religious services claim, there is no dispute between the parties with regard to the following facts. LCF policy, which at one time allowed inmates, including Plaintiff, to attend multiple religious services, changed in 2006 [Doc. No. 95, Exhibit 1, ¶¶ 2 and 3]. Under the new policy, inmates were permitted to attend services for only one faith group. *Id.* In March, 2006 Plaintiff filed a request to staff directed to Defendant (Chaplain) Tinker seeking permission to attend services for two

---

[3]The exhaustion-related findings by both the undersigned and by Judge DeGiusti were made in response to a motion filed by the LCF Defendants in which they properly – and timely – "assumed the burden of establishing Plaintiff's failure to administratively exhaust his claims before bringing his action in this court." [Doc. No. 51, p. 6].

different faith groups – specifically, Hispanic Protestant and Pentecostal/Charismatic Protestant – and noting that "many, many" inmates were being allowed access to the services of more than one basic faith group [Doc. No. 88, Exhibit 13, p. 2].

Plaintiff did not receive his requested relief and proceeded to raise the same issue through a grievance directed to Defendant (Warden) Miller. *Id.* at pp. 3 - 4. Plaintiff's grievance listed the names of certain "similar[ly] situated inmates" who were being permitted to attend the multiple services which were being denied to him, including Warren Singley, Zach Massingale, Jose Coronado, Richard Rowe, Michael Hicks, Markus Crane, and Oscar Herrera. *Id.* at p. 4. Plaintiff's summary judgment evidence – undisputed by the LCF Defendants – demonstrates that these same seven inmates were listed, through Defendant (Programs Director) Schnee[4], on rosters[5] permitting them, effective July, 2007, to attend both a Pentecostal/Charismatic Protestant service, *id.* at Exhibit 25, p. 16 (Singley), p. 13 (Massingale), p. 5 (Coronado), p. 15 (Rowe), p. 10 (Hicks), p. 5 (Marcus Crane), and p.10 (Herrera), and an Hispanic Protestant service, *id.* at Exhibit 30, p. 4 (Singley), p. 4 (Massingale), p. 2 (Coronado), p. 4 (Rowe), p. 3 (Hicks), p. 2 (Marcus Crane), and p. 3 (Herrera).

---

[4]Defendant (Program Director) Schnee denied a related request to staff submitted by Plaintif in April, 2006 [Doc. No. 88, Exhibit 14, p. 2].

[5]The memoranda containing the attendance rosters are dated June 25, 2007 and June 26, 2007 respectively. An official with LCF has authenticated the attendance rosters or "logs" by affidavit [Doc. No. 88, Exhibit 24, p. 2, ¶ 5].

Plaintiff was denied the relief requested through his grievance, *id.* at Exhibit 13, p. 5, and ultimately filed this action claiming that LCF's religious services policy was selectively enforced against him and requesting monetary damages and "that [he] be allowed to attend additional services as is afforded similarly situated inmates." [Doc. No. 1, sequential p. 8]. Because Plaintiff does not claim to be a member of a protected class, his equal protection claim is construed as a cause of action on behalf of a class of one.   *See Village of Willowbrook v. Olech,* 528 U.S. 562 (2000).  For purposes of summary judgment, a plaintiff, as a class of one, establishes that his right to equal protection has been violated by presenting evidence demonstrating that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Id.* at 564.[6]

Plaintiff's evidence demonstrates that when LCF officials enforced their new religious services policy against him and refused to place him on the attendance rosters for multiple faith based services, he provided those officials with the names of inmates who he alleged were still being allowed to attend multiple services.  His evidence further establishes that seven of the inmates he named were still being allowed to attend multiple services well over a year after he submitted his March, 2006 request to staff.  Defendants counter Plaintiff's

---

[6]In this connection, Defendants maintain that the Tenth Circuit has interpreted the Supreme Court's decision in *Olech* as requiring a class of one Plaintiff to further demonstrate that Defendants acted with ill will or malice against him [Doc. No. 95, p. 2].  Because the undersigned concludes that Plaintiff is not entitled to summary judgment on his religious services claim because of a disputed question of material fact,  Defendants' legal  argument is addressed only in connection with their motion for summary judgment on the religious services claim.

evidence with an affidavit by Defendant (Chaplain) Tinker who referenced the new policy implementation in 2006 and stated that "[t]he attendance of some inmates at multiple faith group programs as noted in the records of attendance in 2006 and 2007 cited by [Plaintiff] was during a phase of implementation of the program to limit inmates to one group which took a period of several months to identify and correct."  [Doc. No. 95, Exhibit 1, ¶ 4]. Defendant (Chaplain) Tinker further swore that "[a]ll inmates are required by LCF policy to subscribe to one faith group only.  No one inmate is singled out for enforcement of this policy, including [Plaintiff]. Any inmates who attend multiple groups are in violation of LCF policy and upon discovery are required to cease such attendance."  *Id.* at ¶ 6.

The evidence presented by Plaintiff establishes that in March, 2006 he provided LCF officials with the names of inmates who were being afforded a benefit denied to him. Despite Defendant (Chaplain) Tinker's averment that "[a]ny inmates who attend multiple groups are in violation of LCF policy and upon discovery are required to cease such attendance," *id.*, some sixteen months after "discovery" seven of the inmates named by Plaintiff were still attending the multiple faith group programs that Plaintiff was prohibited from attending.  Based upon this evidence, a reasonable jury could conclude that Plaintiff was intentionally treated differently from these seven similarly situated inmates and that this was done without any rational basis.[7] On the other hand,  Defendant (Chaplain) Tinker swore

---

[7]Were Plaintiff complaining about being intentionally treated differently than unidentified inmates who slipped through the cracks during the phase-in of a new policy and were placed on the attendance rosters of multiple faith group services for only a "period of several months" as claimed (continued...)

that Plaintiff was not singled out for enforcement of the policy and, based upon this evidence, a reasonable jury could determine that the LCF officials merely mismanaged attendance issues without any intent to treat Plaintiff differently from these other inmates.  This issue of Defendants' intent is one of fact for the jury and cannot be resolved on summary judgment.  Accordingly, it is recommended that Plaintiff's motion for summary judgment on his religious services claim be denied.

### **Defendants' Motion for Summary Judgment**

Defendants have proffered five allegedly undisputed facts in connection with Plaintiff's religious services claim [Doc. 90, pp. 2 - 4].  None of these facts speak to the merits of Plaintiff's equal protection claim and, thus, do not support summary judgment in favor of Defendants.  Nonetheless, Defendants' argument, *id.* at 15, advances a legal defense which, if valid, could defeat Plaintiff's claim.

As previously referenced, *see supra* n. 6, Defendants rely on authority from the Tenth Circuit imposing the additional requirement on a class of one plaintiff to demonstrate that Defendants acted with ill will or malice against Plaintiff.[8]  Plaintiff has not even advanced

---

[7](...continued)
by  Defendant (Chaplain) Tinker, no reasonable jury could find a violation of Plaintiff's right to equal protection.

[8]Defendants also argue that "Plaintiff cannot establish that the denial of Plaintiff's request [to attend services for more than one faith group] was intentional or purposeful discrimination" unless he proffers evidence that permission for these other inmates to attend multiple services "was not granted through inadvertence." [Doc. No. 90, p. 15].  As was discussed in connection with Plaintiff's motion for summary judgment on this issue, *see supra* pp. 6 - 10, Plaintiff has submitted sufficient evidence to raise a question requiring jury resolution on the issue of Defendants' intent.

such an allegation here and certainly has not presented any *direct* evidence of ill will or malice [Doc. No. 1].  The undersigned's research reveals that Defendants are correct with regard to the Tenth Circuit's holdings; the evolution of these rulings was most recently discussed by our circuit court in published form in a concurring opinion[9] where the majority had found it unnecessary to reach the class of one issue:

> There is (or has been) uncertainty in this and other courts over whether the plaintiff in a class-of-one equal protection suit must show that its discriminatory treatment was motivated by some form of subjective malice, vindictiveness, or ill will, in addition to being arbitrary and irrational.  *See Jennings v. City of Stillwater,* 383 F.3d 1199, 1210-11 (10th Cir. 2004) (describing but not resolving the issue).[10]  The Supreme Court in *Olech* held that allegations of "irrational and wholly arbitrary" action state a claim under a class-of-one theory, "quite apart from the Village's subjective motivation." *Olech,* 528 U.S. at 565, 120 S.Ct. 1073 (internal quotation marks omitted).  It therefore declined to consider the role that "subjective ill will" might play in a class-of-one claim.  *Id.* (internal quotation marks omitted).  In a separate opinion, not commanding a majority, Justice Breyer concurred specifically on the ground that the plaintiffs alleged that the defendants took "vindictive action" resulting from "illegitimate animus" and "ill will."  *Id.* at 566, 120 S.Ct. 1073 (Breyer, J., concurring)(internal quotation marks omitted).  On two occasions, this Court has adopted Justice Breyer's suggestion and has rejected class-of-one claims in the absence of evidence of subjective ill will.  *Mimics, Inc. v. Vill. of Angel Fire,* 394 F.3d 836, 848-49 (10th Cir. 2005); *Bartell v. Aurora Pub. Sch.,* 263 F.3d 1143, 1148-49 (10th Cir. 2001).[11]

---

[9]Judge McConnell, while dissenting in part, concurred in the judgment under a class of one theory.  *Christian Heritage,* 483 F.3d at 1037.

[10]Defendants' argument places primary reliance on the decision in *Jennings* [Doc. No. 90, p. 15].

[11]The undersigned's review of both the *Mimics* and *Bartell* decisions reveals that the plaintiffs in both cases *alleged* that the actions of which they complained were motivated by ill will or animosity.  *See Mimics, Inc. v. Village of Angel Fire,* 394 F.3d 836, 848 (10th Cir. 2005); *Bartell v. Aurora Pub. Sch.,* 263 F.3d 1143, 1148 (10th Cir. 2001).  The Tenth Circuit held those plaintiffs
(continued...)

11

*Christian Heritage,* 483 F.3d at 1043 (McConnell, J., concurring) (footnote omitted). Because Judge McConnell believed that the plaintiff had produced sufficient summary judgment evidence of ill will or vindictiveness, he went on to state that the "best course" would be to reserve decision on the ultimate question of whether a showing of animus is required of a class of one plaintiff.  *Id.*

In light of what to the undersigned is the clear ruling[12] by the majority of the Supreme Court that a showing of ill will or vindictiveness is not required by a class of one plaintiff, *Olech,* 528 U.S. at 565, and given the uncertain status of this issue before the Tenth Circuit as summarized by Judge McConnell, it is recommended that Defendants' motion for summary judgment on Plaintiff's religious services equal protection claim – a motion grounded on the argument that Plaintiff must demonstrate ill will or vindictiveness by Defendants – be denied.  While our court of appeals has imposed this requirement in the past, the Supreme Court specifically excluded a defendant's subjective motivation, *i.e..* 'subjective ill will,' as a required element in a class of one claim.  *Olech,* 528 U.S. at 565.

## **Plaintiff's Motion to Add New Defendant**

Plaintiff states that he has now discovered that an LCF employee named Dean Caldwell, a deputy warden, "was also jointly responsible for making decisions as to what

---

[11](...continued)
to their allegations and required that they submit summary judgment evidence in support of their claims.

[12]For commentary on this point *see* J. Michael McGuinness, *The Impact of* Village of Willowbrook v. Olech *on Disparate Treatment Claims,* 17 *Touro L.Rev.* 595 (2001); Erwin Chemerinsky, *Suing The Government for Arbitrary Actions,* 36 *Trial* 89 (May 2000).

LCF inmates attend LCF religious services" and seeks to join him as a Defendant [Doc. No. 86, p. 1]. The only evidentiary support Plaintiff provides for this motion is that the LCF Defendants admitted that Deputy Warden Caldwell was "jointly responsible." *Id.* Presumably, Plaintiff discovered this information when it was disclosed to him by counsel for the LCF Defendants [Doc. No. 88, Exhibit 15, p. 1]. Plaintiff does not address the issue of whether Deputy Warden Caldwell was aware, through requests to staff and grievances or otherwise, of Plaintiff's complaints that similarly situated inmates were being allowed to attend multiple services while he was not. Plaintiff does not address whether Deputy Warden Caldwell was even employed at LCF at that time. Unless Deputy Warden Caldwell was aware of Plaintiff's complaints, his decisions as to which inmates could attend services would lack the intent required to establish a class of one claim.

Accordingly, the undersigned recommends that Plaintiff's motion to amend his complaint to add Dean Caldwell at this advanced stage of this prolonged litigation be denied without prejudice to being reurged should Plaintiff discover relevant evidence of Deputy Warden Caldwell's involvement.

### Equal Protection - Hygiene Supplies

Plaintiff alleges in his complaint that the LCF Defendants "provide and or allow other similarly situated inmates to either purchase adequate hygiene supplies or they are provided said adequate, quality and proper quanity [sic] of shampoo, toothbrush, toothpaste, dental floss, proper diet, etc. by the incarcerating facility" and that this gives rise to an equal protection violation [Doc. No. 1, sequential p. 6]. Nonetheless, Plaintiff's summary

judgment motion addresses his hygiene complaints only in terms of an alleged violation of his Eighth Amendment rights and not as an equal protection claim [Doc. No. 87, pp. 16 - 24]. Accordingly, in the absence of evidence or argument, the undersigned does not construe Plaintiff's summary judgment motion as seeking judgment on his hygiene supply equal protection claim.

Defendants have, however, moved for summary judgment on this claim, arguing that Plaintiff, following a full opportunity for discovery, is unable to support an equal protection claim in connection with his receipt of indigent hygiene supplies [Doc. No. 90, pp. 16 - 17]. In response to this argument, Plaintiff has submitted identically worded, un-notarized declarations from six inmates who maintain that they also receive inadequate indigent hygiene supplies but are able to supplement those supplies using their gang pay at the LCF canteen [Doc. No. 94, pp. 10 - 11; Exhibits C - H].  Plaintiff, however, specifically claims that he "is *not* allowed to spend his prison gangpay (money paid inmates for LCF work detail) on any additional hygiene supplies from LCF commissary/canteen[.]" *Id.* at p. 11.[13] Accordingly, Plaintiff has not proffered evidence as to an essential element of an equal protection claim because he has failed to establish that he was treated differently than any similarly situated inmate by anyone at LCF.  Specifically, Plaintiff has not demonstrated that

---

[13]While Plaintiff – who explains in his summary judgment motion (adopted by reference in his response brief [Doc. No. 94, p. 1]) that he is not allowed to utilize his gang pay because of his indebtedness to LCF [Doc. No. 88, Exhibit 10, ¶ 1] – maintains that "policy that forces inmates to choose between purchasing hygienic supplies or legal supplies is unacceptable," *id.* at 11, he has not asserted a challenge to LCF's debt collection procedure or its application to him in this lawsuit. Moreover, although he believes the supplies to be inadequate, it is undisputed that Plaintiff receives indigent hygiene supplies free of charge.

he was treated any differently with regard to indigent hygiene supplies than any other inmate who received indigent hygiene supplies and, in addition, was not allowed to utilize gang pay to purchase supplemental hygiene supplies from the LCF canteen because of an outstanding indebtedness to LCF and was, thus, similarly situated to Plaintiff.  Because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," *Celotex,* 477 U.S. at 323, Defendants are entitled to summary judgment on Plaintiff's equal protection hygiene supplies claim.

### Eighth Amendment - Medical Care - Hair Loss

### Plaintiff's Motion for Summary Judgment

As with Plaintiff's religious services claim, it is noted at the outset of this discussion of Plaintiff's claims related to hair loss that under the law of this case "Plaintiff has effectively exhausted the issue of whether Defendants were deliberately indifferent to Plaintiff's serious medical needs both in their refusal to allow Plaintiff to be seen by a physician rather than a nurse for his hair loss complaint and in their refusal to provide shampoo for Plaintiff through medical services." [Doc. No. 51, pp. 15-16].  Accordingly, the following analysis will be limited to these two claims effectively grieved by Plaintiff prior to filing this lawsuit.

The Eighth Amendment requires prison officials to provide humane conditions of confinement, including access to the basic necessities of medical care.   *See Farmer v. Brennan,* 511 U.S. 825, 832 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  The United States Supreme Court has made clear that "deliberate indifference to serious medical needs

15

of prisoners constitut[ing] the 'unnecessary and wanton infliction of pain,'" may amount to a violation of the Eighth Amendment. *Id.* at 104 (citation omitted). This deliberate indifference standard has two components: (1) an objective component in which the plaintiff's pain or deprivation must be shown to be sufficiently serious, and (2) a subjective component in which it must be shown that the offending officials acted with a sufficiently culpable state of mind. See *Handy v. Price,* 996 F.2d 1064, 1067 (10th Cir. 1993); *Miller v. Glantz,* 948 F.2d 1562, 1569 (10th Cir. 1991). As to the objective component, the Tenth Circuit has stated that a condition is sufficiently serious where the condition is one diagnosed by a physician as mandating treatment or that is so obvious even a lay person would easily recognize the necessity for a doctor's attention. *See Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir.1980). As to the subjective prong of this test, a plaintiff must establish that a defendant knew of a substantial risk of harm and failed to take reasonable measures to abate it. See *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999). Such deliberate indifference may be shown where prison officials "have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment." *Ramos,* 639 F.2d at 575.

Not every claim of inadequate medical treatment rises to the level of a constitutional violation. A claim of medical malpractice or negligence plainly does not constitute a constitutional violation. *Estelle,* 429 U.S. at 105. As the Supreme Court has stated:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional

> violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Id.* at 106. *See Whitley v. Albers,* 475 U.S. 312, 319 (1986) (Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety"); *Handy,* 996 F.2d at 1067 (finding plaintiff's claim that prison doctor was negligent in treatment of Hepatitis C did not constitute a constitutional violation). Likewise, a disagreement over a course of treatment does not amount to a constitutional violation. *Ramos,* 639 F.2d at 575 ("a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment"). Plaintiff's hair loss claims and the evidence in this case will be examined against these standards.

Plaintiff's grievance records establish that on January 3, 2005, Plaintiff submitted a medical request for a renewal of a Motrin prescription and further stated that

> [m]y hair has been falling out gradually, but daily, for years since I have been here. LCF [    ] Health Services Notice (Attached page 5) says to see a physician. Apparently I need to see a doctor about that problem. Thanks.

[Doc. No. 30, Attachment 17-A, part 9, p. 208]. A second request was submitted on January 10, 2005, in which Plaintiff further described his hair loss:

> My hair has been falling out substantially on a daily basis since being at this facility. According to Wackenhut Corrections Corporation Health Services Notice page 5 "If you lose a lot of hair every day, see a physician." I need appointment to see doctor about this issue. Being I'm unable to purchase

shampoo, my hair loss could possibly be the result?  Page 5 also states "Don't
use bar soaps - "

*Id.* at part 7, p. 175.

Next, on January 13, 2005, Plaintiff submitted a Request to Staff complaining that
when he presented for a medical appointment, the nurse only acknowledged his Motrin refill
request and did not permit him to see a doctor with regard to his hair loss complaint; no relief
was granted [Doc. No. 88, Exhibit 6, pp. 2 - 3].  Plaintiff's grievance regarding the matter,
*id.* at pp. 4 - 5, was then denied by Defendant DeWeese, the Facility Health Services
Administrator:

> In response to your grievance dated 1/24/05 in which you are seeking to see
> a physician, receive a diagnosis for your hair loss and be approved a remedy
> to receive or purchase shampoo for your hair loss.  All of the above issues
> were answered on your Request to Staff dated 1/13/05.  What you are
> experiencing is long term or chronic hair loss, which you were experiencing
> prior to your incarceration.  Your own statements indicate your losing hair for
> over seven years.[14]  The recommendation to see a physician about hair loss is
> related to a sudden onset of daily excessive hair loss, which is not your
> situation.  Shampoo is not known to prevent or stop hair loss.  Shampoo is a
> personal item and is available through the commissary.

*Id.* at p. 6

Plaintiff subsequently appealed his grievance denial; former Defendant Cotner, DOC
Medical Services Administrator, granted partial relief after finding that while Plaintiff's
record showed that a nurse received his sick call request, the record did not show that the
nurse addressed Plaintiff's complaint.  *Id.* at 1.  Former Defendant Cotner directed that,

---

[14]Plaintiff maintains it was not for a period of seven years but was, instead, a period of six
years [Doc. No. 38, p. 5, ¶ 9].

"Therefore, the health services administrator at your facility will be advised to have a

qualified health care professional address your original concern which you submitted in your

sick call complaint on January 3, 2005." *Id.*

In response to former Defendant Cotner's directive, a medical entry dated March 11,

2005, by Defendant DeWeese states:

> Late entry for 1/13/05.  This inmate was seen by an RN who questioned the
> inmate what he wanted to see the MD for.  When the inmate said "hair loss"
> the RN Tracy Reich followed medical protocol by professionally screening out
> medical complaints that do not warrant being seen by the M.D.

[Doc. No. 30, Attachment 17-A, part 1, p. 20].

Through his summary judgment motion, Plaintiff maintains that LCF has never

provided shampoo with his indigent hygiene supplies although it is required to by policy[15]

[Doc. No. 87, p. 4, ¶¶ 4 and 5]; that this failure to provide him with shampoo has resulted in

daily hair loss,[16] *id.* at ¶ 6; that an LCF notice recommends regular shampooing and avoiding

bar soaps, *id.* at ¶ 7; and, that while LCF advised inmates to see a physician if they were

losing a lot of hair every day, his request to see a physician was denied, *id.* at ¶ 8.  Even were

a trier of fact to wholly credit these assertions, however, Plaintiff has failed to establish as

---

[15]The evidence submitted by Plaintiff does not support his contention.  Plaintiff has submitted
a copy of what he maintains is "LCF/DOC" policy requiring that all LCF indigent inmates be
supplied free shampoo  [Doc. No. 87, p. 4, ¶ 4].  Instead, the policy submitted by Plaintiff is
DOC policy only which provides that local procedures govern how shampoo is provided
[Doc. No. 88, Exhibit 2, p. 2, ¶ 2].  Plaintiff has not submitted a copy of LCF policy relating
to the provision of shampoo and, in fact, has submitted LCF's sworn interrogatory answer
that LCF policy does not require that shampoo be provided in indigent hygiene packages.
*Id.* at Exhibit 1, Interrogatory No. 2 and Answer].

[16]Plaintiff provides no evidence other than his own opinion in support of this contention.

19

a matter of law that any LCF Defendant was deliberately indifferent to any serious medical needs.

Defendant (LCF Health Services Administrator) DeWeese reviewed Plaintiff's grievance request to see a physician because his hair had "been falling out gradually, but daily, for years," [Doc. No. 30, Attachment 17-A, part 9, p. 208], and, as a remedy, to be allowed to receive shampoo for his hair loss [Doc. No. 88, Exhibit 6, p. 6]. Defendant DeWeese explained to Plaintiff that he was experiencing chronic hair loss and not "a sudden onset of daily excessive hair loss" which would warrant a physician's examination. *Id.* Defendant DeWeese further advised that "[s]hampoo is not known to prevent or stop hair loss." *Id.* Nonetheless, on appeal of the denial of his grievance to the DOC Medical Services Administrator, former Defendant Cotner found that while Plaintiff's record showed that a registered nurse had reviewed Plaintiff's sick call request,[17] the record did not document that the nurse addressed the complaint. *Id.* at p. 1. Accordingly, former Defendant Cotner directed Defendant (LCF Health Services Administrator) Deweese "to have a qualified health care professional address your original concern, which you submitted in your sick call complaint on January 3, 2005." *Id.* That Defendant Deweese followed through with this directive is reflected by a late entry showing that a registered nurse saw Plaintiff on January

---

[17]Former Defendant Cotner relied on DOC policy, OP-140117, and its requirement that "a registered nurse, or a licensed practical nurse under the clinical supervision of a registered nurse or healthcare provider, will review submitted sick call request forms upon receipt, and schedule clinic appointments within three working days, when clinically indicated." [Doc. No. 88, Exhibit 6, p. 6].

13, 2005 and determined, pursuant to policy,  that Plaintiff did not need to see a physician about his hair loss [Doc. No. 30, Attachment 17-A, part 1, p. 20].

Plaintiff has not shown that his medical need was anything more than he consistently reported it to be, the daily and gradual loss of hair over the course of several years.  He has not established that any LCF Defendant refused to provide him with medical attention - he simply disagrees with the decision made by a qualified health care professional that he did not need to see a physician[18] as well as the determination that shampoo would not be ordered to treat his chronic hair loss.  A disagreement over a course of treatment, however, does not amount to a constitutional violation.  *Ramos,* 639 F.2d at 575.  Plaintiff's claim of deliberate indifference in connection with his hair loss fails as a matter of law, and it is recommended that his motion for summary judgment on this claim be denied.

### **Defendants' Motion for Summary Judgment**

Because application of the undisputed material facts demonstrate that no LCF Defendant was deliberately indifferent to any serious hair-loss related medical need of the Plaintiff, it is recommended that summary judgment be granted in favor of Defendants on this claim.  *See Christian Heritage,* 483 F.3d at 1030 ("Where the facts are not in dispute and the parties disagree only about whether the actions were constitutional, summary disposition is appropriate.")

---

[18]An inmate has no *per se* constitutional right to treatment by a physician rather than a nurse. *See Boyett v. County of Washington,* 282 Fed. Appx. 667, 673-4 (10th Cir. June 19, 2008) (unpublished op.), *cert. denied,* ____U.S. ____, 129 S. Ct. 647 (2008).

**Eighth Amendment - Inadequate Hygiene Supplies**

**Plaintiff's Motion for Summary Judgment**

Before addressing Plaintiff's proof with regard to his claim that he received inadequate hygiene supplies, the court's previous exhaustion findings are again determinative of the scope of Plaintiff's claim.   In his summary judgment discussion of the alleged inadequacy of his indigent dental hygiene supplies, Plaintiff maintains that "[t]here is also the issue as to defendants refusing to provide a bone graft because of expenses involved wherein was an alternative to pulling pltf's subject molar tooth." [Doc. No. 87, p. 20].  To the extent that Plaintiff is maintaining that a *medical* decision or action by any LCF Defendant in this regard was violative of the Eighth Amendment, he has stated in his administrative materials "that my grievance was not directed to medical or dental but L.C.F. administration . . . [for] injury [as] a result of . . . deprivation of necessary and adequate dental hygiene supplies[.]" Doc. No. 28, Attachment 13, p. 12].   Consequently, in determining the LCF's previous motion regarding Plaintiff's exhaustion efforts, the undersigned specifically found that Plaintiff "was grieving the inadequacy of indigent hygiene supplies and the resulting consequences rather than the adequacy of a specific instance of dental care." [Doc. No. 51, p. 15].  Thus, the following discussion is limited to whether Plaintiff has established for purposes of summary judgment that his Eighth Amendment rights were violated because he has been deprived of shampoo and dental floss in his indigent hygiene packages, as well as because the toothbrushes furnished to him were inadequate, and because he received an inadequate amount and quality of soap and

toothpaste.  While Plaintiff's complaint also references the failure by the LCF Defendants to provide him with a proper diet [Doc. No. 1, sequential p. 6], the undersigned did not conclude that Plaintiff had exhausted such a claim [Doc. No. 51, pp. 15 - 16] and Plaintiff has not attempted to pursue such claim in his summary judgment motion.

The Eighth Amendments's requirement that "humane conditions of confinement" be provided by prison officials, *see Farmer,* 511 U.S. at 832, "include[s] provision for basic hygiene."   *See Whitington v. Ortiz,* 307 Fed. Appx. 179, 186 (10th Cir. Jan. 13, 2009)(unpublished op.)(*citing Penrod v. Zavaras,* 94 F.3d 1399, 1406 (10th Cir. 1996). Nonetheless, as with Plaintiff's Eighth Amendment claim relating to his medical care, "a prison official violates the Eighth Amendment only when two requirements are met." *Farmer,* 522 U.S. at 834.  First, objectively, Plaintiff's deprivation must be "sufficiently serious." *Id.*  "Mere discomfort or temporary adverse conditions which pose no risk to health or safety do not implicate the Eighth Amendment." *Whitington,* 307 Fed. Appx. at 187(*citing Hudson v. McMillian,* 503 U.S. 1, 9 (1992). Second, subjectively, the "prison official must have a sufficiently culpable state of mind." *Farmer,* 511 U.S. at 834 (internal quotation marks omitted).  Here, Plaintiff must demonstrate on summary judgment that in connection with providing indigent hygiene supplies to Plaintiff, an LCF Defendant acted with deliberate indifference, exposing Plaintiff "to a sufficiently substantial risk of serious damage to his future health.'" *Id.* at 843 (internal quotation marks omitted).

While both the undersigned and Judge DeGiusti agreed in considering the LCF Defendants' previous motion to dismiss that Plaintiff had stated a valid constitutional claim

23

with regard to hygiene supplies [Doc. No. 58, p. 11], Plaintiff's proof rather than his

allegations are tested on summary judgment.  As the court in *Whitington,* 307 Fed. Appx. at

194, explained,

> There is a significant difference between getting over the minimal threshold
> of dismissal under Fed, R. Civ. P. 12(b)(6) by relying on the bare allegations
> of the complaint, and thereafter having to prove those allegations.
> Significantly different standards apply.
>
> A host of questions surround [Plaintiff's] allegations, each requiring proof.
> [Plaintiff] must prove not only the fact and extent of his actual injuries, and the
> seriousness of them, sufficient to clear the Eighth Amendment hurdle, he must
> also link any injuries shown to exist to the denial of one of the . . . hygiene
> items in question.

*Id.*

### **Soap**

While Plaintiff's complaint alleges that the LCF Defendants "refuse to provide

plaintiff with timely and adequate quality and quanity [sic] of soap as required by law," [Doc.

No. 1, sequential p. 6], and while he has requested summary judgment on the issue [Doc. No.

87, pp. 23 - 24], Plaintiff's statement of undisputed facts, *id.* at pp. 3 - 7, makes no reference

to the inadequacy of the soap that he was provided, the deprivation of soap, or any injury

resulting from any inadequacy or deprivation thereof.  As Plaintiff has not established – or

even alleged –  that he suffered *any* type of injury resulting from the alleged deprivation or

inadequacy of the soap provided free of charge as part of his indigent hygiene supplies,

Plaintiff has failed to establish that any deprivation of soap was "sufficiently serious,"

*Farmer,* 511 U.S. at 834, so as to implicate the Eighth Amendment.  Accordingly, it is

recommended that Plaintiff's motion for summary judgment in this regard be denied.

**Shampoo**

It is undisputed that Plaintiff has never received shampoo as part of his indigent hygiene supplies while incarcerated at LCF.  Nonetheless, it is likewise undisputed that the *only* injury that allegedly resulted from the absence of shampoo is the long-term, gradual loss of Plaintiff's hair.  *See* Doc. No. 87, p. 4, ¶ 6 ("Plaintiff maintains LCF defendants [sic] failure to provide him with shampoo has resulted in daily hair loss during time frame complained.").  Accordingly, the undersigned finds that the deprivation of shampoo was not objectively serious as it "pose[d] no risk to [Plaintiff's] health and safety," *Whitington,* 307 Fed. Appx. at 187, and that Plaintiff's claim in this regard fails as a matter of law.

**Dental Supplies - Toothbrush, Toothpaste, and Floss**

It is undisputed that Plaintiff has been provided with free travel-sized toothbrushes as part of his indigent hygiene supplies while incarcerated at LCF.[19]  Plaintiff maintains, however, that these toothbrushes "are inadequate to accomplish [LCF dental staff's] recommended toothbrushing technique." [Doc. No. 87, p. 5, ¶ 12].  It is also undisputed that Plaintiff receives free toothpaste.  Plaintiff maintains, however, that the amount of toothpaste

---

[19]Plaintiff maintains as a statement of undisputed fact [Doc. No. 87, p. 6, ¶ 17] that "LCF admits they have [n]ever provided quality toothbrushes to indigent inmates," pointing to the LCF Defendants' responses to Plaintiff's requests for admissions [Doc. No. 88, Exhibit 3, Request for Admission No. 4].  In that request Plaintiff requested that the LCF Defendants "admit or deny that LCF has ever provided quality toothbrushes to indigent inmates." *Id.* The response was "Admitted. LCF provides toothbrushes to inmates every 30 days."  Plaintiff argues that the word "ever" was a typographical error which was actually "'never' in pltf's original submitted request for admissions." [Doc. No. 87, p. 6, ¶ 17].  Contrary to Plaintiff's representation, however, the exhibit shows that Plaintiff used the word "ever" in the request.  What looks like a hand-written insertion mark appears over the space between the typed words "has" and "ever."  If Plaintiff intended this mark to change the word "ever" to "never," he did not make this intention clear.

he is provided is inadequate.  *Id.* at ¶ 13. Further, it is undisputed that Plaintiff has never

received dental floss as a part of his indigent hygiene supplies.  Nevertheless, Plaintiff

maintains that "LCF has constantly over the years advised plaintiff to regularly floss his

teeth." *Id.* at ¶ 10.  It is also undisputed that dental floss is available for purchase in the LCF

canteen/commissary.[20]

Plaintiff asserts that it undisputed that "LCF's Health Service Notice states poor

hygiene can lead to 'Loss of Teeth', and poor dental hygiene can also cause swelling

bleeding gums, gingivitis and periodontitis disease." *Id.* at p. 6, ¶ 14. The undersigned finds

that such is undisputed; the fact, however, that poor dental hygiene *can* lead to dental

problems does not support Plaintiff's claims here.  The question, instead, is whether Plaintiff

has established for purposes of summary judgment that he was prevented from achieving a

constitutionally acceptable level of dental hygiene due to inadequate dental hygiene supplies

and whether his injuries actually resulted from those inadequacies.

To that point, Plaintiff further states as a matter of undisputed fact that "LCF def's

refusal to supply him, being indigent, with adequate toothbrush, toothpaste (quality &

quantity), dental floss, and other similar dental hygiene supplies has resulted in tooth loss,

---

[20]Plaintiff states as a matter of undisputed fact that "[d]uring the time periods of 1999-2008 . . . plaintiff has not been able to purchase any hygiene of any kind from LCF commissary/canteen except for when ODOC allots $5.00 to his account for annual Christmas bonus, which has not always occurred since 1999." Doc. No. 87, pp. 3 - 4, ¶ 3.  Plaintiff then concludes that "[i]n otherwords [sic] plaintiff solely relied upon LCF's distribution of indigent hygiene supplies since as early as spring 1999." *Id.*  Apart from the obvious inconsistency of these statements, Plaintiff has acknowledged that he had some funds available to purchase dental floss from the canteen/commissary.

teeth injury and health decline in areas of dental,"*id.* at p. 5, ¶ 9, and that "LCF's failure and

or at times refusal to supply plaintiff with adequate dental hygiene items has not only resulted

in tooth loss but periodontitis disease and infection thereof surrounding the tooth removed

on or about 8/09/08."[21]  *Id.* at p. 6, ¶ 15.  In support of these purported facts, Plaintiff relies

on the averments in his complaint and in ¶¶ 1 - 9 of the Declaration submitted in conjunction

with his summary judgment motion [Doc. No. 88, Exhibit 10].  In his Declaration, however,

with one exception, Plaintiff, as did the plaintiff in *Whitington,* 307 Fed. Appx. at 194,

"largely turns the allegations of his complaint into self-proving facts[.]" The one exception

consists of purported statements by two LCF dentists that the toothbrush provided  as part

of the indigent hygiene supplies "was basically worthless." [Doc. No. 88, Exhibit 10, p. 2,

¶ 4].  These purported statements by the dentists, however, are inadmissible hearsay.  *See*

*Argo v. Blue Cross and Blue Shield of Kansas, Inc.,* 452 F.3d 1193, 1199 (10th Cir.

2006)("[A]t summary judgment, courts should disregard inadmissible hearsay statements

*contained* in affidavits, as those statements could not be presented at trial in any

form.")(emphasis in original).

     In short, based upon the evidence he has elected to present on summary judgment,

Plaintiff has failed to demonstrate as a matter of undisputed fact that the allegedly inadequate

dental supplies he received from LCF caused his dental difficulties and that he is entitled to

---

[21]The undersigned presumes that Plaintiff intended to state that his tooth was removed on
September , 2005. [Doc. No. 88, Exhibit 10, p.3, ¶ 7].

summary judgment on his claim of deliberate indifference.  Thus, it is recommended that Plaintiff's motion for summary judgment in this regard be denied.

### Defendants' Motion for Summary Judgment

In connection with Plaintiff's claim that his Eighth Amendment rights have been violated because of the inadequacy of his indigent hygiene supplies, the LCF Defendants focus on the sufficiency of Plaintiff's *allegations* rather than the sufficiency of his post-discovery proof of those allegations.[22] They argue, for example, that "[n]one of Plaintiff's claims meet the standards regarding the establishment of an Eighth Amendment violation. Any alleged violations simply do not rise to the required constitutional level.  Summary judgment should be granted in favor of the LCF Defendants."  [Doc. No. 90, p. 17].  This court has previously determined, however, that Plaintiff's complaint states a constitutional claim. [Doc. No. 58, p. 11].  Nonetheless, because the undersigned has determined that there is no genuine issue for trial with regard to two of Plaintiff's indigent supply claims – inadequate soap in the absence of even an *allegation* of injury and deprivation of shampoo in the absence of *serious* injury – it is recommended that summary judgment be granted in favor of the LCF Defendants on these two claims.

---

[22]Thus, the undersigned has not considered whether Plaintiff "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex,* 477 U.S. at 323.

As to Plaintiff's dental hygiene supply claims, the LCF Defendants focus – with one exception[23] – in both their statement of undisputed facts [Doc. No. 90, pp. 5 - 7] and in their argument, *id.* at pp. 17 - 19 and 20 - 21, on the actual dental care provided Plaintiff by LCF. Plaintiff's claim is not, however, that the LCF Defendants were deliberately indifferent to his undisputably serious dental needs through their dental treatment but rather through their failure to provide adequate hygiene supplies to allow him to effectuate the day-to-day treatment recommended by the LCF dentists.  In this connection, the LCF Defendants' own statement of undisputed facts shows that an LCF dentist repeatedly demonstrated brushing and flossing technique to Plaintiff, *id.* at ¶¶ 13, 18, 19, and 21, yet they do not dispute the fact that floss was not provided to Plaintiff as part of his indigent supplies and do not address whether this brushing technique – the modified bass brushing technique – can be accomplished with the type of toothbrush provided to Plaintiff.

The only evidence proffered by the LCF Defendants to prove the absence of any genuine issue of material fact is an affidavit from an LCF dentist, Dr. Jones, who states that the amount of toothpaste supplied to indigent LCF inmates "would be sufficient for the average person's proper dental care," *id.* at Exhibit 1, ¶ 4, that "[a]ny person who does not regularly participate in his oral hygiene regimen may experience tooth loss regardless of how much toothpaste is supplied," *id.* at Exhibit 1, ¶ 5, and that "it is not necessary to have

---

[23]Relying on the affidavit by an LCF dentist, the LCF Defendants state as a matter of undisputed fact that "[t]he extraction of Plaintiff's tooth was in no way related to inadequate hygiene supplies such as tooth paste." [Doc. No. 90, p. 7, ¶ 23].

toothpaste for proper dental hygiene as proper brushing does not require toothpaste." *Id.*  Dr. Jones' affidavit, however, only addresses Plaintiff's contention that the amount of toothpaste that is currently provided to indigent inmates is adequate but does not reference the amounts which Plaintiff claims he formerly received [Doc. No. 88, Exhibit 10, p. 6, ¶ 18].  Moreover, the LCF Defendants have submitted no proof that Plaintiff failed to "regularly participate in his oral hygiene regimen," and, there is no evidence that Plaintiff was able to accomplish "proper brushing" with the toothbrush provided to him.

Finally, the LCF Defendants maintain that they are entitled to summary judgment because "Plaintiff makes no allegation that prison officials knew of any substantial risk of serious harm posed by the type of hygiene supplies or dental care he was receiving." [Doc. No. 90, p. 21].  A review of Plaintiff's complaint, however, reveals that Plaintiff clearly made such a claim as to LCF Defendants Poppell, Miller, Rollerson, DeWeese, and Halverson [Doc. No. 1, sequential p. 4].

Accordingly, in connection with Plaintiff's claim that his Eighth Amendment rights have been violated as a result of inadequate dental hygiene supplies, because the LCF Defendants have failed to demonstrate both the lack of a genuine issue of material fact and their entitlement to judgment as a matter of law, it is recommended that their motion for summary judgment on this claim be denied.

## **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

It is the recommendation of the undersigned Magistrate Judge that Plaintiff's motion for summary judgment [Doc. No. 87] be denied and that the LCF Defendants' motion for

summary judgment [Doc. No. 90] be granted with respect to Plaintiff's claim that he was denied equal protection in connection with his indigent hygiene supplies, to Plaintiff's claim that any LCF Defendant was deliberately indifferent to his hair-loss related medical needs, and to Plaintiff's claim that any LCF Defendant violated his Eighth Amendment rights by failing to supply him with adequate soap or shampoo, and that the LCF Defendants' motion for summary judgment be otherwise denied.  It is further recommended that Plaintiff's motion to add Dean Caldwell as an additional Defendant [Doc. No. 86] be denied without prejudice to refiling.

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by the 19th day of August, 2009, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  The parties are further advised that failure to make timely objection to the Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein.  *Moore v. United States,* 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation, along with the Report and Recommendation as to the motion of the LCF Defendants for summary judgment, disposes of all issues referred to the undersigned Magistrate Judge in the present case.

IT IS SO ORDERED this 30th day of July, 2009.


BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE