IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

RICHARD LYNN DOPP,           )
                             )
        Plaintiff,           )
                             )
v.                           )    Case No. CIV-06-842-D
                             )
JUSTIN JONES, *et al.*,      )
                             )
        Defendants.          )

**O R D E R**

Before the Court is Plaintiff's Motion to Strike/Annul Stipulation of Dismissal Due to Fraud/Misrepresentation, filed *pro se* on November 23, 2009 [Doc. No. 119]. Plaintiff seeks relief from the dismissal of his case on grounds that the underlying settlement agreement was procured by fraud and misrepresentation of defense counsel, Brant Elmore. Plaintiff contends the settlement funds were not paid directly to him as promised but were forwarded to the Oklahoma Department of Corrections (DOC) after he signed the settlement papers.[1] Defendants have timely opposed the Motion, denying Plaintiff's allegations that he was promised direct payment of the funds and relying on a statute, Okla. Stat. tit. 57, § 566.1, as mandating payment to DOC. Plaintiff has filed a reply brief asserting that Mr. Elmore represented to him in a letter and a telephone conversation that the funds would be sent to Plaintiff at a residence address in Miami, Oklahoma. Plaintiff also argues that payment to him or his designee in Miami was a material term of the settlement agreement, which Defendants have breached.

---

[1] Plaintiff also makes a fanciful allegation that Defendants or their counsel somehow engineered his temporary release from the Lawton Correctional Facility, discussed below, in order to obtain the settlement. The Court disregards this allegation as frivolous. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("frivolous" under 28 U.S.C. § 1915(d), now § 1915(e)(2), encompasses fanciful factual allegations).

Upon consideration of the Motion, the case record, and the governing law, the Court finds Plaintiff's allegations of fraud and breach of contract are insufficient to warrant relief from the dismissal. The Stipulation of Dismissal signed by all parties effected a voluntary dismissal of the action by Plaintiff, without a court order.[2] *See Janssen v. Harris*, 321 F.3d 998, 1000 (10th Cir. 2003) (a filing pursuant to Rule 41(a)(1) closes the case; "no action is required on the part of the court"); *see also Netwig v. Georgia Pacific Corp.*, 375 F.3d 1009, 1010 (10th Cir. 2004) (district court lost jurisdiction over plaintiff's claims when Rule 41(a)(1) dismissal was filed). Rule 60(b) expressly authorizes relief from a final order of dismissal on grounds of fraud or misconduct by an opposing party and any other reason that justifies relief, such as "an unanticipated intervening change of circumstances" that renders enforcement inequitable. *See Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 579 (10th Cir. 1996); Fed. R. Civ. P. 60(b)(3), (6). To obtain relief under Rule 60(b)(3), Plaintiff must present clear and convincing proof of fraudulent conduct. *See DeVargas v. Montoya*, 796 F.2d 1245, 1258 (10th Cir. 1986). For purposes of ruling on Plaintiff's Motion, the Court assumes the truth of Plaintiff's factual allegations and the truth of undisputed facts stated in Defendants' response, although none are supported by an affidavit or a declaration pursuant to 28 U.S.C. § 1746.

On October 5, 2009, Plaintiff was released from the Lawton Correctional Facility (LCF). On the day of his release, Defendants' counsel received a letter from Plaintiff dated October 2, 2009, offering to settle this case and a second, recently-filed case in exchange for $5,000 per case. On October 13, 2009, Plaintiff filed in each case a notice of a change of address dated October 9, 2009, listing the address of his mother's residence in Miami, Oklahoma. The notice in the second case

---

[2] Notably, the Stipulation of Dismissal does not state whether the dismissal is with or without prejudice to refiling. Therefore, the dismissal is without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(B).

included a notice of voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). *See Dopp v. Miller*, Case No. CIV-09-101, Notice [Doc. No. 39] (W.D. Okla. Oct. 13, 2009). By letter from Mr. Elmore dated October 23, 2009, Defendants made a counteroffer of $1,000 to settle this case in exchange for a dismissal with prejudice and a general release of all claims. Plaintiff telephoned Mr. Elmore and expressed dissatisfaction with the offered amount. In a subsequent call days later, Mr. Elmore stated that $1,000 was the maximum amount of his settlement authority. Plaintiff stated he needed money to buy clothing and tools and expressed his concern that DOC might be entitled to some or all of the settlement funds. Mr. Elmore responded that, in light of Plaintiff's release from custody, the full amount of the funds would be sent directly to Plaintiff in Miami once he signed a stipulation of dismissal and a general release. Plaintiff signed the documents on November 5, 2009, believing he would receive a $1,000 check that "would be unconditioned with no strings attached." *See* Motion [Doc. 119] at 2. Relying on this belief, Plaintiff borrowed $1,000 from his mother and promised to repay her when he received Defendants' check.

On November 6, 2009, Plaintiff was taken into DOC custody amid accusations that he had obtained his release by causing LCF to receive a fraudulent court document showing Plaintiff had discharged his sentence. On the same day that Plaintiff was returned to custody, a check for $1,000 payable to Plaintiff was issued from a settlement account in Dallas, Texas.[3] Mr. Elmore subsequently received the check and on November 13, 2009, sent a letter to Plaintiff at the Oklahoma State Penitentiary enclosing copies of the check and Okla. Stat. tit. 57, §§ 566 and 566.1, and informing Plaintiff the check had been forwarded to DOC as required by the statute. Mr. Elmore filed the signed Stipulation of Dismissal in the case record the same day.

---

[3] Presumably, the check was issued in connection with an insurance policy; it references an insured (LCF) and a policy number. *See* Defs.' Resp., Ex. G [Doc. 120-8].

3

In asserting a claim of fraud, Plaintiff essentially seeks to rescind the settlement agreement based on allegations that he was fraudulently induced to make the contract by Mr. Elmore's false representation that Plaintiff would receive a direct payment of the settlement money.[4] The premise of Plaintiff's fraud claim is a false promise of performance, rather than a false representation of an existing fact. Under either federal or state law,[5] a false promise regarding future performance constitutes fraud only when it is accompanied by a present intention not to perform. *See Citation Co. Realtors, Inc. v. Lyon*, 610 P.2d 788, 790 (Okla. 1980); Okla. Stat. tit. 15, § 58(4); *see also* Restatement (First) of Contracts § 473. "The gist of the rule is not the breach of a promise, but the fraudulent intent of the promisor at the time the pledge is made not to perform the promise so made and thereby deceive the promisee." *Citation*, 610 P.2d at 790; *see Mid-West Chevrolet Corp. v. Noah*, 48 P.2d 283, 287 (1935). The Oklahoma Supreme Court has explained the rule as follows:

> There is a wide distinction between the nonperformance of a promise and a promise made *mala fide*, and without any intention at the time of making it to perform it. And while ordinarily a statement upon which fraud may be predicated must be of an existing fact, yet if a promise is made to be performed in the future, as an inducement to obtain a contract, if the intention not to perform the promise be shown to have existed at the time the promise was made, such false promise constitutes cognizable fraud.

*McLean v. Southwestern Cas. Ins. Co.*, 159 P. 660 (Okla. 1915) (syllabus by the court).

Here, Plaintiff does not claim that Mr. Elmore promised to send the settlement check to Plaintiff in Miami without any intention of actually sending it. To the contrary, Plaintiff alleges that at the time of the promise, both Mr. Elmore and Plaintiff understood the settlement money could be

---

[4] "A release is a contract." *Corbett v. Combined Comm. Corp. of Okla., Inc.*, 654 P.2d 616, 617 (Okla. 1982).

[5] The court of appeals has noted a conflict in authority regarding whether federal or state law governs controversies involving contracts to settle federal claims but has declined to resolve the question because "basic contract rules" are the same under either law. *See Heuser v. Kephart*, 215 F.3d 1186, 1190-91 (10th Cir. 2000).

paid directly to Plaintiff because he was no longer incarcerated and the statute would not apply. Plaintiff argues vociferously in his reply brief that Mr. Elmore made an enforceable promise that should be honored, notwithstanding Plaintiff's reincarceration and the requirements of the statute. Accordingly, the Court finds that Plaintiff has failed to present a claim of actionable fraud that provides a basis for relief from the dismissal of his case under Rule 60(b)(3).

The question remains whether a change of circumstances or the impossibility of performing the settlement agreement according to its alleged terms warrants relief under Rule 60(b)(6).[6] The Court assumes for the purpose of ruling on Plaintiff's Motion that his return to custody between the time he made the agreement and signed the release and the time the settlement check was received by Mr. Elmore constitutes an unanticipated intervening change of circumstances, which may be remedied under Rule 60(b)(6). This catch-all provision affords district courts "a grand reservoir of equitable power to do justice in a particular case." *Cashner*, 98 F.3d at 579 (internal quotation omitted). However, "[t]he broad power granted by clause (6) is not for the purpose of relieving a party from free, calculated and deliberate choices he has made. A party remains under a duty to take legal steps to protect his own interests." *Id*. at 580 (internal quotation omitted).

In this case, Plaintiff apparently made a calculated decision to sign the release and the Stipulation of Dismissal before he received the settlement check, even though the release recites that the sum of $1,000 had been received. *See* Defs.' Resp., Ex. E [Doc. 120-6]. The release also states that it embodies the entire agreement of the parties, but it is silent concerning the alleged promise of payment directly to Plaintiff or his designee. It appears that Plaintiff deliberately chose to place expediency over careful judgment. Moreover, while Plaintiff may have hoped to avoid the operation

---

[6] Plaintiff does not dispute that the statute requires an inmate's settlement funds to be forwarded to DOC and distributed according to § 566.1.

5

of the statute, the Court sees no reason why it is not effective under these circumstances. Plaintiff's evaluation of his claim was made at a time when he believed he would directly receive the full amount of the settlement funds. The fact that the settlement funds may now be used to satisfy outstanding debts, as provided by § 566.1, does not change the value of the claim, nor would relieving Plaintiff from his settlement decision avoid the operation of the statute so long as he remains incarcerated. The settlement funds were in fact paid, only subject to § 566.1 as the statute requires. Granting Plaintiff relief from the dismissal would merely permit him to continue the litigation at greater expense to Defendants and the public.[7] In short, to permit Plaintiff to avoid the dismissal and pursue his claims under these circumstances would not yield an equitable result.

For these reasons, the Court finds that Plaintiff should not be granted relief from the voluntary dismissal of his case.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Strike/Annul the Stipulation of Dismissal [Doc. No. 119] is DENIED.

IT IS SO ORDERED this 30th day of December, 2009.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[7] Plaintiff is proceeding *in forma pauperis* under 28 U.S.C. § 1915 and has requested appointment of counsel for trial, which would likely be necessary in light of his current confinement in a maximum security facility.